**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bahig Saliba, | No. CV-22-00738-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| American Airlines Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss (Doc. 43), in which they seek dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. For the following reasons, the Motion will be granted.

**I.    BACKGROUND**

On May 2, 2022, pro se Plaintiff Bahig Saliba, a pilot for Defendant American Airlines ("American") since 1997, initiated this action alleging various claims arising out of American's company mask policy. (Doc. 1). The Complaint alleged claims against American; Chip Long, American's Senior Vice President of Flight; and Timothy Raynor, American's Director of Flight. (Doc. 1 at 1).

On September 12, 2022, the Court granted Defendants' Motion to Dismiss the Complaint. (Doc. 32). The Court dismissed Plaintiff's claims against Defendant Long without prejudice for lack of personal jurisdiction; dismissed Plaintiff's claims for violations of aviation law and breach of the Joint Collective Bargaining Agreement without prejudice and without leave to amend for lack of subject matter jurisdiction; and

dismissed Plaintiff's hostile work environment, defamation, and § 1983 claims with leave to amend for failure to state a claim. (Doc. 32 at 12). On September 30, 2022, the Court denied Plaintiff's Motion for Reconsideration. (Doc. 34).

On October 10, 2022, Plaintiff filed his First Amended Complaint, which purported to "preserve[ ] the remaining claims in the original complaint." (Doc. 35 at 1). On October 11, 2022, the Court issued an Order advising that an amended complaint supersedes the original complaint and setting a deadline if Plaintiff elected to file another amended complaint. (Doc. 36). On October 17, 2022, Plaintiff filed a Motion to Add New Defendant (Doc. 37)—specifically, Alison Devereux-Naumann, American's chief pilot for the Phoenix pilot base—followed two days later by a Second Amended Complaint that did not name Ms. Devereux-Naumann as a defendant. (Doc. 38). On October 20, 2022, the Court therefore denied the Motion to Add Defendant as moot and set a deadline for Plaintiff to file another amended complaint if he wished to do so. (Doc. 39).

On October 25, 2022, Plaintiff filed the operative Third Amended Complaint ("TAC") against Defendants American, Long, Raynor, and Devereux-Naumann. (Doc. 40). Plaintiff's claims arise from his objections to two American policies related to the COVID-19 pandemic. First was a vaccination policy that was instituted pursuant to a March 25, 2021 Letter of Agreement between American and the Allied Pilots Association, which is the union that represents American's pilots. (Doc. 40 at 7). Plaintiff asserts that COVID-19 vaccinations "were incentivized by American and the Plaintiff was coerced, under threat of termination, into accepting medical treatment in violation of his Contract." (Doc. 40 at 7). Second was American's face mask policy. (Doc. 40 at 9). He asserts that "[f]acial masking is a procedure that interferes with the standards of issuance of [a Federal Aviation Administration ("FAA")] medical certificate," which is required by federal regulations for a pilot to fly. (Doc. 40 at 4, 9). Plaintiff refused to abide by the policy, and that disagreement came to a head on December 6, 2021. (Doc. 40 at 9). Plaintiff arrived at the Spokane International Airport for a flight to Dallas Fort

Worth, and police at the airport attempted to enforce the then-existing federal mask mandate against Plaintiff. (Doc. 40 at 18). The police reported the incident to American, which initiated disciplinary proceedings against Plaintiff. (Doc. 40 at 18–19).

On January 6, 2022, Defendant Raynor conducted a disciplinary hearing and threatened Plaintiff with consequences up to and including termination. (Doc. 40 at 11). On March 30, 2022, Defendant Long conducted an appear hearing via videoconference. (Doc. 40 at 14–15). Thereafter, Plaintiff expressed that he felt he was being discriminated against. (Doc. 40 at 12). Later, Defendant Devereux-Naumann demanded that Plaintiff undergo a fitness-for-duty examination with a forensic psychiatrist under threat of termination, without providing Plaintiff a reason for the assessment. (Doc. 40 at 12–13). The examination was rescheduled several times, and Plaintiff reported sick on August 19, 2022, the day on which it was ultimately set. (Doc. 40 at 13). Defendant Devereux-Naumann issued an investigation letter for Plaintiff's failure to appear for the appointment and placed him on unpaid leave. (Doc. 40 at 13). On September 1, 2022, Plaintiff obtained a new FAA-issued medical certificate. (Doc. 40 at 13). Plaintiff has been removed from flight status since December 6, 2021 (Doc. 40 at 25).

The TAC alleges four causes of action: (1) breach of contract; (2) hostile work environment; (3) violation of § 1983; and (4) violation of aviation law and related regulations. (Doc. 40 at 2). On November 8, 2022, Defendants filed the pending Motion to Dismiss, which has been fully briefed. (Docs. 43, 45, 46).

**II.   LEGAL STANDARDS**

    **a.  Personal Jurisdiction**

Federal Rule of Civil Procedure ("Rule") 12(b)(2) authorizes dismissal for lack of personal jurisdiction. When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion is based on written materials rather than an evidentiary hearing, as here, the Court must determine "whether the plaintiff's pleadings and affidavits make a

prima facie showing of personal jurisdiction." *Id.* (internal quotation marks omitted). Plaintiffs "cannot simply rest on the bare allegations of [their] complaint," but "uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotation marks and citation omitted).

### b. Subject Matter Jurisdiction

Rule 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (internal quotation marks omitted). "A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006); *see also Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Renteria*, 452 F. Supp. 2d at 919. "When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." *Id.* "A plaintiff has the burden of proving that jurisdiction does in fact exist." *Id.*

### c. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the

light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## II.   DISCUSSION

Plaintiff's TAC alleges four causes of action: (1) breach of employment contract; (2) hostile work environment; (3) violation of 42 U.S.C. § 1983 by violating Plaintiff's Fourteenth Amendment rights; and (4) violation of aviation law and regulations. (Doc. 40 at 2). Defendants argue that Plaintiff has failed to meet the pleading standard for any of his claims, and Defendant Long argues that the Court lacks personal jurisdiction over him. The Court will begin by addressing personal jurisdiction, then will address each claim in turn.

### a.   Personal Jurisdiction as to Defendant Long

When no federal statute is applicable to govern personal jurisdiction, as is the case here, "the district court applies the law of the state in which the district court sits." *Id.* at 800. "Arizona's long-arm jurisdictional statute is co-extensive with federal due process requirements; therefore, the analysis of personal jurisdiction under Arizona law and federal due process is the same." *Biliack v. Paul Revere Life Ins. Co.*, 265 F. Supp. 3d 1003, 1007 (D. Ariz. 2017). For a court to exercise personal jurisdiction, federal due process requires that a defendant have "certain minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Personal jurisdiction can be general or specific. *Biliack*, 265 F. Supp. 3d at 1007. A court may exercise general jurisdiction "only when a defendant is essentially at home in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks omitted). That is plainly inapplicable here, where Defendant Long is alleged only to have responded to an email from and conducted a videoconference disciplinary appeal hearing for Plaintiff, who was located in Arizona.

The Ninth Circuit applies a three-prong test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of establishing the first two prongs. *Id.* If Plaintiff satisfies them, the burden shifts to Defendant "to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

Regarding the first prong, Plaintiff argues that Defendant Long purposefully directed his activity at Arizona. "Purposeful direction requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (internal quotation marks and alteration omitted). "An intentional act is one denoting an external manifestation of the actor's will[,] not including any of its results, even the most direct, immediate, and intended." *Id.* (internal quotation marks and alterations omitted). When considering whether a defendant's conduct is expressly aimed at the forum state, the Court must look at "contacts that the defendant *himself* creates with the forum" and "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1143 (internal quotation marks omitted). "[R]andom, fortuitous, or attenuated contacts are insufficient to create the requisite connection with the forum." *Id.* at 1142 (internal quotation marks omitted).

As noted, the only allegations regarding Defendant Long's contacts with Arizona are that (1) he responded to an email from Plaintiff, and (2) he held an appeal hearing for

Plaintiff using videoconference. (Doc. 40 at 14–16). A defendant's injurious communications with a plaintiff known to reside in the forum state give rise to personal jurisdiction even if the defendant himself was out of state. For example, in *Atkins v. Calypso Systems, Inc.*, the plaintiff alleged that a defendant "intentionally called and emailed a person in Arizona, and those communications caused injury." No. CV-14-02706-PHX-NVW, 2015 WL 5856881, at *7 (D. Ariz. Oct. 8, 2015). The Court found those allegations sufficient for specific personal jurisdiction. Likewise, here, Plaintiff alleges that Defendant Long intentionally emailed and held a videoconference with Plaintiff, a known Arizona resident, and that those communications caused injury. Plaintiff has therefore satisfied the first two prongs of the personal jurisdiction test, and Defendant Long makes no argument that the exercise of jurisdiction would be unreasonable. Accordingly, the Court has personal jurisdiction over Defendant Long.

### b.  Breach of Contract Claim

Plaintiff's breach of contract claim alleges that "Defendants created and implemented a mandatory health-related company policy . . . that directly violated the employment Contract between Plaintiff and Defendant American that the Plaintiff rejected." (Doc. 40 at 2). To state a breach of contract claim under Arizona law, "a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. County of Maricopa*, 318 P.3d 419, 435 (Ariz. Ct. App. 2014). Defendants argue that Plaintiff has failed to plead either of the first two elements.

The TAC alleges that Plaintiff has an employment contract with American, pointing to certain documents attached as Exhibit A "in support of Plaintiff's employment contract." (Doc. 40 at 3). Those documents include Plaintiff's employment application, a pre-employment notification, notes from his job interview, and excerpts of an employee handbook and flight operations manuals. (Doc. 40-2).  Pre-hiring documents certainly do not establish the existence of an employment contract, but employee handbooks or manuals can create contractual promises, depending on the circumstances.

*See Bollfrass v. City of Phoenix*, --- F. Supp. 3d ---, 2022 WL 4290591, at *8–9 (D. Ariz. Sept. 16, 2022). The Court assumes without deciding that Plaintiff has sufficiently alleged that the attached employee handbook and flight operations manuals are contractual, because Plaintiff's failure to allege a breach of any of the terms contained therein—or elsewhere—is dispositive.

The TAC alleges that American's mask policy breached terms in the flight operations manual requiring pilots "to maintain a current medical certificate appropriate for the crew position he/she currently holds" and to "bar themselves from flight duty and advise the Chief Pilot's office immediately . . . any time they know themselves to be unable to meet the medical or physical standards required by regulation or common sense for their crew position." (Doc. 40-2 at 11; Doc. 40 at 3). These terms plainly impose obligations on Plaintiff, not Defendants. American's implementation of a mask policy simply does not violate these terms.

Plaintiff's arguments to the contrary are unavailing. He argues that "[a]ny imposition by American of any medical procedure is . . . a violation of the very term of the employment contract." (Doc. 45 at 7). This argument is utterly baseless. The terms at issue merely bar Plaintiff from flying if he lacks the appropriate certification or is not in the requisite condition to do so. They do not prevent American from imposing a policy that Plaintiff personally believes affects his certification or ability to meet the medical or physical standards. Plaintiff also misses the point with his argument that his "pilot and medical certificates are contractual terms of the employment contract benefiting American, without either one there is no contract to provide air transportation." (Doc. 45 at 8). Of course, Plaintiff cannot fly without the proper certificates, pursuant to both American policies and federal regulations. But Plaintiff has not established any contractual term that would prevent American from imposing additional requirements, such as its mask and vaccination policies, even if Plaintiff believed those requirements would affect his certificates. Thus, the TAC fails to allege any breach of contract.

///

### c. Hostile Work Environment Claim

Plaintiff's hostile work environment claim alleges that "Defendants created and continue to create a hostile work environment and wrongfully invoked a disciplinary process reserved for disputes rooted in terms and conditions agreed to in Collective Bargaining Agreements."[1] (Doc. 40 at 2). Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions or privileges of employment because of his race, color, religion, sex, or national origin." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To state a hostile work environment claim based on national origin, a plaintiff must allege that "(1) [he] was subjected to verbal or physical conduct of a harassing nature that was based on [his] national origin . . . , (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Nagar v. Found. Health Sys., Inc.*, 57 F. App'x 304, 306 (9th Cir. 2003). Moreover, to establish subject matter jurisdiction over a Title VII claim, however, a plaintiff must exhaust his administrative remedies "by filing a timely charge with the [Equal Employment Opportunity Commission ("EEOC")], or the appropriate state agency." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)). Defendants argue that Plaintiff's hostile work environment must be dismissed both because he failed to exhaust his administrative remedies and he fails to state a claim.

First, it is true that the TAC does not plead exhaustion, as it makes no mention of an EEOC charge. This is despite the fact that the Court previously dismissed the hostile work environment claim in Plaintiff's Complaint based on the exhaustion requirement. (Doc. 32 at 8). Still, "[t]he Supreme Court has held that failure to exhaust is an affirmative defense that does not require a Plaintiff to specifically plead or demonstrate

---

[1] To the extent Plaintiff attempts to state a claim for breach of the Joint Collective Bargaining Agreement, that claim was already dismissed without leave to amend for lack of subject matter jurisdiction due to preemption by the Railway Labor Act. (Doc. 32 at 9–10).

9

exhaustion in the complaint." *Cabrera v. Serv. Emps. Int'l Union*, No. 2:18-cv-00304-RFB-DJA, 2020 WL 2559385, at *5 (D. Nev. May 19, 2020) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Attached to Plaintiff's Response to the Motion to Dismiss is a Notice of Right to Sue letter issued by the EEOC to Plaintiff on November 30, 2022, so the Court will not dismiss the hostile work environment claim for failure to exhaust. (Doc. 45-3).

Moving to the merits, Plaintiff fails to state a claim because he does not allege that he experienced harassing conduct based on his national origin. In fact, the only reference to Plaintiff's national origin in the TAC is the allegation that "the police report that was offered to [American] by the Spokane Airport police . . . referenced the plaintiff as a Middle Eastern individual under race and Plaintiff contends that racial profiling by the police was passed on to [American]." (Doc. 40 at 19). But there is no basis on which to infer that any Defendant took any action against Plaintiff because of his national origin. Although Plaintiff alleges that he "felt he was being discriminated against," he provides no basis for that belief, and belief alone is insufficient to state a plausible claim for relief. (Doc. 40 at 12); *see Ashcroft*, 556 U.S. at 678 (stating that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not "naked assertions devoid of further factual enhancement" (internal quotation marks omitted)).

Instead, in the "hostile work environment" section of the TAC, Plaintiff specifically alleges that he "feels he is being targeted for refusing to accept an amendment to his employment contract." (Doc. 40 at 10; *see also* Doc. 40 at 14 ("Plaintiff is being targeted by the Defendants and he can only conclude that every one of the Defendants['] actions is calculated to exert maximum pressure to force the plaintiff into submission and surrendering his authority over his medical Certificate.")). The facts alleged in the TAC support an inference that Plaintiff was disciplined due to his refusal to comply with American's mask policy, which is not, of course, a protected characteristic under Title VII. This further detracts from Plaintiff's bare assertion of national-origin

discrimination. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations . . . [p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible."). Given the lack of facts suggesting national origin discrimination and Plaintiff's own allegations about why he was disciplined, Plaintiff has failed to plead a plausible hostile work environment claim.

### d. Section 1983 Claim

Plaintiff's § 1983 claim alleges that "Defendants became State actors by their actions following the event of December 6, 2021, violating Plaintiff's constitutional rights, namely his Fourteenth Amendment rights." (Doc. 40 at 2). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Defendants argue that this claim must be dismissed because they are not state actors. Indeed, the "defendants as state actors" section of the TAC is largely taken word-for-word from Plaintiff's Response to Defendants' first Motion to Dismiss. (*Compare* Doc. 40 at 18–20 *with* Doc. 30 at 9–11). The Court has already rejected those arguments in its September 12, 2022 Order, but because there are at least some additional allegations in the TAC, the Court will address them anew. (Doc. 32 at 10–12).

Plaintiff alleges that "[o]n December 6, 2021, the Defendants['] interests and that of the police officers at the Spokane International Airport aligned, that is enforce the facial masking on Plaintiff at any cost and protect the travel service provided by the airline" and that "the police were in violation of the Plaintiff['s] Fourteenth Amendment rights and . . . the violation continued by the Defendants." (Doc. 40 at 18–19). Courts use four tests to identify state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (internal quotation marks omitted).

First, the public function test applies only when a private entity is "endowed by the State with powers or functions" that are "both traditionally and exclusively governmental." *Id.* at 1093 (internal quotation marks omitted). The TAC alleges that "police power was delegated to the defendants and only the defendants could have continued targeted police action against the plaintiff on [American] property." (Doc. 40). But Plaintiff does not allege any specific government power that was delegated; rather, the allegations make clear that American was enforcing its own mask policy using its own disciplinary procedures. As the Court stated in its previous Order, "[a] private employer's disciplinary proceedings against its employee are certainly not a traditional and exclusive government function." (Doc. 32 at 11).

Second, the joint action test applies "when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093 (internal quotation marks omitted). The TAC alleges that "the Defendants jointly with the Spokane police carried on what the police had started, a benefit the police were intending on receiving, lawfully or unlawfully is immaterial here, they intended on forcing the Plaintiff to use facial masking." (Doc. 40 at 19). In short, Plaintiff argues that the joint action test applies because American's actions were designed to make Plaintiff wear a mask—which, at the time, was required by federal law (*see* Doc. 40 at 17)—and the Spokane Police accepted that benefit. But the TAC makes no effort to explain how American's efforts use of its disciplinary process in response to Plaintiff's noncompliance with company policy and federal law amounted to unconstitutional behavior with benefits knowingly accepted by the Spokane Police.

Third, "[t]he compulsion test considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Id.* at 1094. The TAC alleges that "[t]he Police compelled the Defendants to pursue the Plaintiff" by notifying American of their encounter on December 6, 2021 and following up with a manager. (Doc. 40 at 19), Specifically, Plaintiff cites to the police report and an email from a police officer providing

information about how to request public records and body camera footage "if investigated" and offering to provide additional information. (Doc. 40-8). The Court finds no authority suggesting that the mere provision of factual information—or any other contact alleged between the police and American in the TAC—amounts to coercion or significant encouragement. Nothing in the TAC leads to an inference that American's decision to pursue disciplinary proceedings against Plaintiff was influenced by the government rather than by independent, internal decision-making.

Closely related is the nexus test, which "asks whether there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at 1094–95 (internal quotation marks omitted). Again, given the relatively minimal contact between the airport police and American, there is no such nexus. Because Plaintiff has failed to plead that Defendants were acting under color of state law, his § 1983 claim must be dismissed.

### e. Aviation Law Claim

Finally, the TAC alleges that Defendants violated aviation law and regulations. The Court previously dismissed this claim without leave to amend, finding that there is no private right of action under the Federal Aviation Act or its associated regulations. (Doc. 32 at 7–8). The Court reaffirmed that finding in its Order denying reconsideration. (Doc. 34 at 4–5). There is no need for the Court to repeat itself a third time; Plaintiff's aviation law claims must be dismissed.

### III.   CONCLUSION

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted). Here, Plaintiff has had ample opportunity to amend his complaint and has repeatedly failed to state a plausible claim for the same or similar reasons. Thus, the Court finds that the deficiencies of the TAC cannot be cured, and this case will be dismissed with prejudice. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3

(9th Cir. 1987).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 43) is **granted** and this case is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 27th day of January, 2023.

_____
Honorable Steven P. Logan
United States District Judge